## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERNATIONAL BROTHERHOOD OF  :  CIVIL ACTION
ELECTRICAL WORKERS LOCAL UNION :  NO.
NO. 126 HEALTH AND WELFARE TRUST :
FUND             :
3455 Germantown Pike        :
Collegeville, PA 19426,       :
   and            :
INTERNATIONAL BROTHERHOOD OF  :
ELECTRICAL WORKERS LOCAL UNION :
NO. 126 RETIREMENT PLAN TRUST FUND :
3455 Germantown Pike        :
Collegeville, PA 19426,       :
   and            :
INTERNATIONAL BROTHERHOOD OF  :
ELECTRICAL WORKERS LOCAL UNION :
NO. 126 OCCUPATIONAL SAFETY, HEALTH :
AND EDUCATION TRUST FUND    :
3455 Germantown Pike        :
Collegeville, PA 19426,       :
   and            :
INTERNATIONAL BROTHERHOOD OF  :
ELECTRICAL WORKERS LOCAL UNION :
NO. 126 NORTHEAST APPRENTICESHIP AND :
TRAINING TRUST FUND       :
3455 Germantown Pike        :
Collegeville, PA 19426,       :
   and            :
NATIONAL ELECTRICAL BENEFIT FUND :
2400 Research Boulevard, Suite 500   :
Rockville, MD 20850,       :
   and            :
INTERNATIONAL BROTHERHOOD OF  :
ELECTRICAL WORKERS LOCAL    :
UNION 126, AFL-CIO,       :
3455 Germantown Pike        :
Collegeville, PA 19426,       :
                 :
      Plaintiffs,      :
                 :
   v.            :
                 :

SM KARCH, LLC                                            :
4224 Gradwohl Switch Road                                :
Easton, PA 18045,                                        :
                                                         :
                    Defendant.                           :

## C O M P L A I N T

This is an action to compel cooperation with a payroll audit pursuant to the Employee

Retirement Income Security Act, as amended (hereinafter "ERISA"), 29 U.S.C. §1001 *et. seq.*,

and the Labor Management Relations Act of 1947, as amended (hereinafter "LMRA"), 29 U.S.C.

§185 *et. seq.*

**JURISDICTION AND VENUE**

1.      The jurisdiction of this Court is invoked pursuant to §502(a)(3)(B), (d)(1) and (f)

and §4301(a)(1), (b) and (c) of ERISA, 29 U.S.C. §§1132 (a)(3)(B), (d)(1) and (f) and §1451(a)(1),

(b) and (c), respectively, and §301(a) of the LMRA, 29 U.S.C. §185(a).

2.      This Court is one of proper venue under ERISA §§4502(e)(2) and 4301(d), 29

U.S.C. §§1132(e)(2) and 1451(d); LMRA §301(c), 29 U.S.C. §185(c); and 28 U.S.C. §1391, as

the Plaintiffs' offices are located in the Eastern District of Pennsylvania.

**PARTIES**

3.      At all times relevant hereto, Plaintiffs International Brotherhood of Electrical

Workers Local Union No. 126 Health and Welfare Trust Fund (hereinafter the "Health Fund"),

International Brotherhood of Electrical Workers Local Union No. 126 Retirement Plan Trust Fund

2

(hereinafter the "Retirement Fund"), International Brotherhood of Electrical Workers Local Union 126 Occupational Safety, Health and Education Trust Fund (hereinafter the "OSHE Fund"), and International Brotherhood of Electrical Workers Local Union No. 126 Northeast Apprenticeship and Training Trust Fund (hereinafter the "NEAT Fund") (collectively the "Local Funds") are "multi-employer plans" and "employee benefit plans" within the meaning of Section 3(2) and (3) of ERISA, 29 U.S.C. §1002(2) and (3), which are respectively maintained for the purpose of providing health, retirement, training, and education concerning occupational safety and related benefits to eligible participants and are trust funds established and maintained pursuant to section 302(c)(5) of the LMRA. The Local Funds qualify to commence this action pursuant to section 502(d)(1) of ERISA, 29 U.S.C. §1132(d)(1), and maintain their principal places of business at 3455 Germantown Pike, Collegeville, Pennsylvania 19426.

4.     At all times relevant hereto, the National Electrical Benefit Fund (hereinafter the "NEBF") is a multiemployer employee pension benefit plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers (hereinafter "IBEW") and the National Electrical Contractors Association. The NEBF maintains an office at 2400 Research Boulevard, Suite 500, Rockville, MD 20850.

5.     At all times relevant hereto, Plaintiff Local Union No. 126 of The International Brotherhood of Electrical Workers, AFL-CIO (hereinafter the "Union") is an unincorporated association commonly referred to as a labor union, and is the exclusive representative for the purposes of collective bargaining of the employees of Defendant SM Karch, LLC who is and/or was employed in an industry affecting interstate commerce within the meaning of 29 U.S.C.

"152(5), (6) and (7), 185(a) and 1002 (4), (11), and (12). The Union maintains its principal place of business at 3455 Germantown Pike, Collegeville, Pennsylvania 19426.

6.      Defendant, SM Karch, LLC (hereinafter the "Contributing Employer"), is an employer in an industry affecting commerce within the meaning of section 3(5), (11) and (12) of ERISA, 29 U.S.C. §§1102(5), (11) and (12), and an "employer" within the meaning of section 301(a) of the LMRA, 29 U.S.C. §185(a) with a place of business located at 473 Old Airport Road #4, New Castle, Delaware 19720.

**BACKGROUND**

7.      The Contributing Employer adopted and agreed to be bound by the Commercial Agreement between the National Electrical Contractors Association, Inc. and the Penn-Del-Jersey Chapter of the National Electrical Contractors Association, Inc. effective between May 29, 2017, and May 31, 2020 (hereinafter the "CBA"). A true and correct copy of the CBA is attached hereto as Exhibit A.

8.      Pursuant to the terms of the CBA, the Contributing Employer was obligated to make full and timely payments to the Plaintiffs on a monthly basis on behalf of its employees based upon the number of hours worked and/or the gross wages paid to such employees. Exhibit A, at Article III, Section 3:10, Article XI, Section 11.10, and Articles XII through XIV (pp. 5, 26-35).

9.      By agreeing to the CBA, the Contributing Employer adopted and agreed to be bound by the Trust Agreements that govern the Local Funds and the NEBF (collectively the

"Funds"). Exhibit A, at Article XII, Section 12:1, Article XIV, Section 14:2, Article XIV, Section 14:3 (pp. 26, 28-29).

## CAUSE OF ACTION

10.     The above paragraphs are incorporated herein by reference as though duly set forth at length.

11.     The Trust Agreements of the Funds require the Employer to produce on demand documents necessary for the Funds to determine that the correct number of hours and compensation paid to employees were reported properly.

12.     In addition, the Local Funds and Union have promulgated a Policy for Collection of Delinquent Contributions, Payroll Audits, Refund of Mistaken Contributions, and Bonding ("Delinquency Policy") which requires contributing employers to be subject to periodic payroll audits to determine whether the correct number of hours and amount of compensation were reported to the Funds and Union and to assure that the correct contributions were paid. A true and correct copy of the Delinquency Policy is attached hereto as Exhibit B.

13.     Pursuant to their right to conduct a payroll audit under the various Trust Agreements and under the Delinquency Policy, the Plaintiffs retained Novak Francella, LLC, a public accounting firm, to conduct periodic independent audits of its contributing employers.

14.     On December 20, 2018, Patricia C. Baker, an auditor from Novak Francella, LLC, sent a letter to the Contributing Employer and requested access to the books and records necessary to conduct a payroll audit for the period between January 1, 2016, and December 31, 2018. The December 20 letter listed all of the records Ms. Baker would need to review for that audit. A true

5

and correct copy of the December 20, 2018 letter is attached hereto as Exhibit C.

15.     The Contributing Employer agreed to allow Ms. Baker to come to their office to review the records for the audit on February 13, 2019, listing again the records that would need to be reviewed for the audit. A true and correct copy of the February 5, 2019 letter confirming the appointment is attached hereto as Exhibit D.

16.     The February 13 appointment was subsequently rescheduled for February 14, 2019. A true and correct copy of the February 13, 2019 through April 10, 2019 email exchange is attached hereto as Exhibit E. See Exhibit E, at p. 3.

17.     On February 14, 2019, Ms. Baker reviewed some of the records listed in the December 20, 2018 and February 5, 2019 letter. At the conclusion of the visit, she explained to the Contributing Employer the records that she still needed to review to complete the audit. That discussion, including the list of materials Ms. Baker still needed to review, was confirmed by email later on February 14, 2019. Exhibit E, at p. 2.

18.     Thereafter the Contributing Employer faxed some, but not all, of the outstanding records listed in the February 14, 2019 email, to Ms. Baker. On February 20, 2019,  Ms. Baker acknowledged receipt of those records and noted that she still needed the other outstanding records. Exhibit E, at p. 1.

19.     Later on February 20, 2019, Shawn Karch, owner of the Contributing Employer, replied to Ms. Baker that he would "check on it." Exhibit E, at p. 1.

20.     No further records were provided to Ms. Baker by the Contributing Employer.

21.     On April 8, 2019, Ms. Baker sent another email to Mr. Karch, reminding him that she needed the records that remained outstanding for the audit. The email further stated that "If I

don't get a date on when I can expect the remaining information before the end of the week, I will have to inform the funds that I am unable to complete this compliance review and then attorneys will get involved." Exhibit E, at p. 1.

22.     On April 10, 2019, Mr. Karch replied to Ms. Baker's email saying: "Thanks for reminding me Pat! It got off my radar. I'm on it." Exhibit E, at p. 1.

23.     The Contributing Employer did not communicate further with Ms. Baker, nor has it supplied to remaining records necessary for the payroll audit.

24.     On April 23, 2019, Plaintiffs, by and through their counsel, sent a letter to the Contributing Employer advising it of the Plaintiffs' right to conduct the payroll audit and demanding that the Employer provide the auditors with immediate access to the records Ms. Baker sought to complete the audit. A true and correct copy of the April 23, 2018 letter is attached hereto as Exhibit F.

25.     The Contributing Employer failed and refused to respond to the April 23 letter.

26.     On May 30, 2019, Plaintiffs, by and through their counsel, sent a second letter to the Contributing Employer marked "Final Warning" and again demanded that the Employer provide the auditors with immediate access to the records Ms. Baker sought to complete the audit. A true and correct copy of the May 30, 2019 letter is attached hereto as Exhibit G.

27.     The Contributing Employer failed and refused to respond to the May 30, 2019 letter.

28.     The Contributing Employer's books and financial records, including still outstanding records listing in Ms. Baker's emails, are the only method to review whether the Employer reported the correct hours and made the correct contributions for the period from January

1, 2016, through December 31, 2018.

29.     The Contributing Employer's financial books and records are in the exclusive control of the Contributing Employer.

30.     The potential hardships to the Contributing Employer by an order requiring the Contributing Employer to grant the auditors access are outweighed by the Plaintiffs' interests in assuring that the Contributing Employer has fulfilled its contractual and statutory obligations to the Plaintiffs.

31.     There is no adequate remedy at law.

32.     All conditions precedent to equitable relief have been satisfied.

WHEREFORE, Plaintiffs ask that the Court:

(1)     Enter an order requiring the Employer to provide the Plaintiffs' auditors access to all necessary information to complete a payroll audit of the period from January 1, 2016, through December 31, 2018;

(2)     Retain jurisdiction to enter judgment for any contributions found due and owing as a result of the audit;

(3)     Enter judgment in favor of the Plaintiffs and against the Employer for attorneys' fees and costs pursuant to ERISA, 29 U.S.C. Section 1132(g)(2)(D); and

(4)     Grant any other further relief the court finds just and proper.

CLEARY, JOSEM & TRIGIANI, LLP

BY
WILLIAM T. JOSEM, ESQUIRE
JEREMY E. MEYER, ESQUIRE
Constitution Place
325 Chestnut Street
Philadelphia, PA 19106
(215) 735-9099

Dated: September 27, 2019

9